IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:24-CV-7-KS

| | |
|---|---|
| BRYAN NORMAN EDGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| MICHELLE KING, Acting ) | |
| Commissioner of Social Security ) | |
| Administration,[1] ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' briefs pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Bryan Norman Edge ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for disability insurance benefits ("DIB"). The time for filing responsive briefs has expired, and the matter is ripe for adjudication. Having carefully reviewed the administrative record and the parties' briefs, the court affirms the Commissioner's decision.

---

[1] Plaintiff's complaint names Martin O'Malley in his official capacity as Commissioner of Social Security. Michelle King is now the Acting Commissioner of Social Security and is therefore substituted as a defendant to this action. *See* Fed. R. Civ. P. 25(d).

## STATEMENT OF THE CASE

Plaintiff protectively applied for a period of disability and DIB on October 26, 2020, with an alleged onset date of November 30, 2019. (R. 24, 397–400.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 24, 162, 175, 232–33.) On January 4, 2022, a telephonic hearing was held before Administrative Law Judge ("ALJ") Mason Hogan, who issued an unfavorable ruling on February 22, 2022. (R. 24, 88–128, 176–209.) On September 23, 2022, the Appeals Council remanded Plaintiff's case for further evaluation of medical source opinion evidence. (R. 24–25, 210–15.) Plaintiff again appeared before ALJ Hogan for a telephonic hearing. (R. 24, 59–87.) On May 2, 2023, ALJ Hogan issued a second unfavorable decision. (R. 24–58.) The Appeals Council denied Plaintiff's request for review on December 29, 2023. (R. 1–6.) This made the ALJ's second decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On February 21, 2024, Plaintiff filed the instant civil action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind

2

Case 2:24-cv-00007-KS    Document 14    Filed 01/23/25    Page 2 of 11

might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps

3

Case 2:24-cv-00007-KS    Document 14    Filed 01/23/25    Page 3 of 11

of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's residual functional capacity] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter, the ALJ found Plaintiff meets the insured status requirements of the Act through September 23, 2023. (R. 27.) At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 30, 2019, the alleged onset date. (R. 27.) Next, the ALJ determined Plaintiff has the severe impairments of degenerative disc disease of the cervical, thoracic, and lumbar spine with thoracic compression fracture and thoracic radiculopathy, osteoarthritis (right shoulder and right knee), headaches (with diagnoses of migraines and tension headaches), and obesity. (R. 27.)

At step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 30.) The ALJ expressly considered Listings 1.15, 1.18, 11.02B, 11.02D, and Plaintiff's obesity pursuant to SSR 19–2p. (R. 30–31.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has

> the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b) in that he can sit six hours in an eight-hour workday; stand and/or walk six hours in an eight-hour workday; lift and carry 20 pounds occasionally and 10 pounds frequently and can push and pull in accordance with those lifting and carrying limitations, but can only frequently push and pull with the bilateral lower extremities; occasionally climb ladders, scaffolds, and ropes; frequently climb ramps and stairs; frequently balance as that term is defined in the Dictionary of Occupational Titles [("DOT")]; frequently stoop, kneel, crouch, and crawl; and frequently reach overhead with the dominant upper extremity. He must avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery. He can only work in occupations that have exposure to no more than moderate noise levels as that term is used in the Dictionary of Occupational Titles. He can only work in occupations that have no exposure to lighting brighter than is found in a typical office or home setting.

(R. 31.) In making this assessment, the ALJ stated that he considered Plaintiff's symptoms and the evidence (both "objective medical" and "other"), based on the requirements of 20 C.F.R. § 404.1529 and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 31, 33.)

5

At step four, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (R. 51.) At step five, the ALJ determined, based upon Plaintiff's age, education, work experience, and RFC, Plaintiff has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy, namely: administrative clerk (DOT #219.362-010), direct mail clerk (DOT #209.587-018), and hotel clerk (DOT #238.367-038). (R. 52.) The ALJ concluded that Plaintiff has not been disabled under the Act from November 30, 2019, the alleged onset date, through the date of the decision. (R. 53.)

## IV. Plaintiff's Argument

Plaintiff contends the ALJ erred in his transferability of skills analysis by failing to explain which skills from Plaintiff's past relevant work would transfer to the jobs identified at step five and how such skills would transfer. (Pl.'s Br. [DE #11] at 1.) (*Id.*) Plaintiff further argues that the ALJ's failure to explain his transferability findings is exacerbated by (i) differences in the DOT's Guide for Occupational Exploration ("GOE") codes for Plaintiff's past relevant work and the step-five jobs and (ii) testimony from the Vocational Expert ("VE") that Plaintiff would need "a little bit of training" to perform the step-five jobs. (*Id.* at 6–8.) The Commissioner argues the ALJ's analysis and explanation was sufficient. (Comm'r's Br. [DE #13] at 11.) For the reasons explained below, the court agrees with the Commissioner.

Under the Social Security disability regulations, skills are transferable "when the skilled or semi-skilled work activities [the claimant] did in past work can be used

6

to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1). Transferability is most common among jobs in which "(i) [t]he same or a lesser degree of skill is required; (ii) [t]he same or similar tools and machines are used; and (iii) [t]he same or similar raw materials, products, processes, or services are involved." 20 C.F.R. § 404.1568(d)(2). However, similarity across all of these factors is not required for transferability. 20 C.F.R. § 404.1568(d)(3).

Special rules apply when determining the transferability of skills for individuals, such as Plaintiff, who are of "advanced age" – age 55 or older. *See* 20 C.F.R. § 404.1568(d)(4). For these individuals, the regulations provide as follows:

> If you are of advanced age and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. If you are of advanced age but have not attained age 60, and you have a severe impairment(s) that limits you to no more than light work, we will apply the rules in paragraphs (d)(1) through (d)(3) of this section to decide if you have skills that are transferable to skilled or semiskilled light work.

20 C.F.R. § 404.1568(d)(4) (citations omitted).

Plaintiff's past relevant work as a manager, food services (DOT #187.167-106) and kitchen supervisor (DOT #319.137-030) qualified as skilled work. (R. 51, 81.) At the January 4, 2023, hearing, the VE identified three semi-skilled clerk jobs that an individual with the same age, education, past relevant work, and RFC as Plaintiff could perform. (R. 52, 81–82.) The VE testified that Plaintiff's past relevant work would have required the following skills: "scheduling, training, accounting services,

7

ordering supplies, hiring, tallying time sheets, administrative duties, and coordinating." (R. 52, 81.) The VE then testified that some of those acquired skills, namely administrative duties, coordinating, scheduling, and ordering items, could transfer to the three clerk jobs identified. (R. 82.)

"When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the . . . ALJ's decision." SSR 82–41, 1982 WL 31389, at *7 (Jan. 1, 1982). While substantial evidence must support an ALJ's finding that a claimant possesses transferable skills, *Pyles v. Bowen*, 849 F.2d 846, 849 (4th Cir. 1988), "[t]he ALJ is not required to describe *how* these skills transfer to the representative occupations named by the vocational expert," *Dameron v. Colvin*, No. 1:09-CV-425, 2013 WL 1909870, at *4 (M.D.N.C. May 8, 2013), *aff'd*, 559 F. App'x 245 (4th Cir. 2014). *See also* SSR 82–41, 1982 WL 31389, at *7 (specifying findings to be made in determinations or decisions involving transferability of skills). The ALJ is entitled to rely on the testimony of the VE when making findings about transferability of skills. *Johnson v. O'Malley*, No. 5:22-CV-164-D, 2024 WL 995934, at *6 (E.D.N.C. Feb. 15, 2024) (citing *Dameron*, 2013 WL 1909870, at *4), *M. & R. adopted*, 2024 WL 992229 (E.D.N.C. Mar. 7, 2024).

While ALJ Hogan's decision may not be a model of clarity, it is sufficient to permit meaningful review. ALJ Hogan did not expressly recite the VE's testimony linking the transferable skills from Plaintiff's past relevant work to the step-five jobs, nor did ALJ Hogan explicitly state that his findings regarding skill transferability

8

Case 2:24-cv-00007-KS   Document 14   Filed 01/23/25   Page 8 of 11

were based upon the VE's expert testimony. (R. 51–52.) Nevertheless, the VE's testimony on this issue is sufficiently clear (*see* R. 82 (VE testifying that Plaintiff's skills regarding "administrative duty, with coordinating and scheduling, and ordering items" obtained from Plaintiff's past relevant work would transfer to the step-five jobs identified by the VE)), and the ALJ implicitly adopted the VE's testimony in this regard. Relying on the VE's testimony, ALJ Hogan identified the skills Plaintiff acquired during his past relevant work. (R. 51–52.) Then, he identified three representative jobs that an individual with Plaintiff's age, education, past relevant work, and RFC could perform "and which require skills acquired in [Plaintiff's] past relevant work but no additional skills." (R. 52.) He specifically noted that these jobs had been identified by the VE as capable of being performed by someone with Plaintiff's RFC and acquired skills. (R. 52, 81–82.) Finally, the ALJ addressed discrepancies in exertional requirements between the VE's testimony and the DOT. Finding a reasonable explanation for the discrepancies based upon the VE's "expert[ ] training and experience in performing job analysis and job placement activities," the ALJ accepted the VE's testimony "in accordance with SSR 00-4p." (R. 52.) Thus, the ALJ satisfied the requirements of SSR 82–41 and need not have explained how certain skills would transfer to the step-five jobs. *See Dameron*, 2013 WL 1909870, at *4; *Johnson*, 2024 WL 995934, at *6 (applying SSR 82–41).

Plaintiff points out that his past relevant work has a different interest area or work group categorization (i.e. GOE code) in the DOT from the jobs identified at step five. (Pl.'s Br. at 6–8.) Citing to VE testimony that Plaintiff may need "a little bit of

9

Case 2:24-cv-00007-KS    Document 14    Filed 01/23/25    Page 9 of 11

training" to do the step-five jobs as they are not in the same industry (Pl.'s Br. at 8; R. 83), Plaintiff argues that the ALJ's failure to explain these differences underscores the insufficiency of the transferability of skills analysis (Pl.'s Br. at 8). The court disagrees. As explained above, the ALJ elicited testimony from the VE identifying transferable skills from Plaintiff's past relevant work and noting which of those skills would transfer to the step-five jobs. Where a claimant of advanced age is limited to sedentary work, skills are transferable only where the step-five jobs are so similar to past relevant work that "very little, if any vocational adjustment" is required. 20 C.F.R. § 404.1568(d)(4). However, the "very little" vocational adjustment requirement does not apply where, as here, a claimant of advanced age is able to perform light work. *Id.* Plaintiff fails to show that SSR 82–41 requires additional analysis about job industry in his case. Moreover, the VE's testimony that Plaintiff may need "a little bit of training" to adjust to the step-five jobs obviates the alleged problem caused by the step-five jobs being in different industries, as it reinforces Plaintiff's ability to transfer skills despite the industry difference. Accordingly, the ALJ applied the correct legal standards and adequately explained his findings to allow for judicial review. Substantial evidence supports the ALJ's findings, and the Commissioner's decision should therefore be affirmed.

## CONCLUSION

Having reviewed the record, the court finds that substantial evidence supports the ALJ's findings and that the ALJ's decision was reached through the application of the correct legal standards. Accordingly, the Commissioner's decision is AFFIRMED.

This 23rd day of January 2025.

*Kimberly A. Swank*
KIMBERLY A. SWANK
United States Magistrate Judge